No. 25-2991

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

SHAMROCK HILLS, LLC,
d/b/a SHAMROCK ROOFING AND CONSTRUCTION,
Appellant,

v.

STATE OF IOWA, IOWA INSURANCE DIVISION, DOUG OMMEN, in his official capacity as Insurance Commissioner of the Iowa Insurance Division, and DAVID SULLIVAN, in his official capacity as Assistant Bureau Chief of the Iowa Insurance Division Market Regulation Bureau,
Appellees.

---

Appeal from the United States District Court for the Southern District of Iowa
The Honorable Rebecca Goodgame Ebinger, United States District Judge

---

# BRIEF OF APPELLANT SHAMROCK HILLS, LLC

---

Heather Voegele
Adam W. Barney
Voegele Anson Law, LLC
3516 N. 163rd Plaza
Omaha, NE 68116
(531) 999-1857
hvoegele@v-alaw.com
abarney@v-alaw.com

Brandon Underwood
Hannah Weymiller
Fredrikson & Byron, P.A.
111 East Grand Avenue, Suite 301
Des Moines, Iowa 50309
(515) 242-8900
bunderwood@fredlaw.com
hweymiller@fredlaw.com

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Iowa requires a license for anyone who, for compensation, "aid[s] an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal property of the insured," or "advis[es] an insured" about the same. Residential contractors are ineligible for such licenses. In other words, in Iowa, residential contractors may not "aid" or "advise" homeowners on their insurance claims.

Appellant Shamrock Hills, LLC ("Shamrock") is a residential contractor that received letters from the Iowa Insurance Division asserting that it was in violation of the public adjuster laws. Thereafter, Shamrock brought this suit alleging that Iowa's public adjuster laws violate the First Amendment right to free speech. Specifically, Shamrock alleges and argues that Iowa's laws define a public adjuster by virtue of what a person says and to whom they speak and, as such, implicates speech, not conduct. Shamrock further alleges that regulating persons based on whether they "aid" or "advise" homeowners with their insurance claims is void for vagueness under the Fourteenth Amendment. The district court dismissed the claims finding, primarily, that Iowa regulates professional conduct, not speech.

Shamrock submits that 15 minutes of argument per side should be sufficient to address the legal issues raised by this appeal.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1A, Appellant Shamrock Hills, LLC d/b/a Shamrock Roofing and Construction ("Shamrock") states that:

1. Shamrock does not have a parent corporation, and there is no publicly held corporation that owns 10% or more of its stock.
2. A supplemental disclosure statement will be filed upon any change in the information provided.

## TABLE OF CONTENTS


SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .......... i

CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF CONTENTS .......... iii

TABLE OF AUTHORITIES .......... iv

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

SUMMARY OF THE ARGUMENT .......... 6

ARGUMENT .......... 8

- I. Standard of Review .......... 8
- II. The district court erred in finding that Iowa's public adjuster laws regulate conduct with mere incidental impacts on speech. .......... 8
  - A. Only narrow categories of speech receive less First Amendment protection as incidental burdens .......... 10
  - B. Iowa's public adjuster laws, as applied, regulate speech, not conduct. .......... 13
  - C. The district court's decision is at odds with the well-reasoned decision by the Texas Supreme Court interpreting its public adjuster laws. .......... 17
  - D. As recognized by the district court, Iowa's law is fundamentally different than the Texas law at issue in *Stonewater Roofing* .......... 21
  - E. The fact that other states regulate public adjusters is of no consequence. .......... 23
- III. The district court erred in concluding that Iowa's prohibition on advertising did not violate the First Amendment. .......... 24
- IV. The district court erred in concluding that Iowa's public adjuster laws are not void for vagueness. .......... 25

CONCLUSION .......... 31

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*33 Carpenters Constr., Inc. v. State Farm Life & Cas. Co.*,
939 N.W.2d 69 (Iowa 2020) ....................................2, 9, 23, 31

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020) ....................................8, 13

*Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025) ....................................8, 10, 11, 16

*Bresnahan v. City of St. Peters*,
58 F.4th 381 (8th Cir. 2023) ....................................8

*Coates v. City of Cincinnati*,
402 U.S. 611 (1971) ....................................27

*Expressions Hair Design v. Schneiderman*,
581 U.S. 37 (2017) ....................................11

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ....................................13

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ....................................28

*Hill v. Colorado*,
530 U.S. 703 (2000) ....................................25

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ....................................2, 12, 13, 17, 21

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001) ....................................16

*McCullen v. Coakley*,
573 U.S. 464 (2014) ....................................15

*National Inst. of Family & Life Advocs. v. Becerra*,
585 U.S. 755 (2018) ....................................2, 10, 11, 12



Appellate Case: 25-2991 Page: 5 Date Filed: 11/20/2025 Entry ID: 5580318

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) ........................................................................ 11

*Nygard v. City of Orono*,
39 F.4th 514 (8th Cir. 2022) ........................................................................ 2, 27

*Otto v. City of Boca Raton*,
981 F.3d 854 (11th Cir. 2020) ........................................................................ 16

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) ........................................................................ 11

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........................................................................ 9

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
487 U.S. 781 (1988) ........................................................................ 23

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........................................................................ 11, 23

*Stahl v. City of St. Louis*,
687 F.3d 1038 (8th Cir. 2012) ........................................................................ 28

*Tex. Dep't of Ins. v. Stonewater Roofing, Ltd.*,
696 S.W.3d 646 (Tex. 2024) ........................................................................ *passim*

*Tingley v. Ferguson*,
144 S. Ct. 33 (2023) ........................................................................ 16

*Tingley v. Ferguson*,
57 F.4th 1072 (9th Cir. 2023) ........................................................................ 13, 14

*United States v. Alvarez*,
567 U.S. 709 (2012) ........................................................................ 15

*United States v. Barraza*,
576 F.3d 798 (8th Cir. 2009) ........................................................................ 27

*United States v. Milk*,
66 F.4th 1121 (8th Cir. 2023) ........................................................................ 26

*United States v. Turner*,
842 F.3d 602 (8th Cir. 2016) ........................................................................2, 30

*United States v. Williams*,
553 U.S. 285 (2008)...........................................................................2, 25, 27

*Vill. of Hoffman Ests. v. Flipside*,
455 U.S. 489 (1982)...............................................................................2, 26

*Vizaline, L.L.C. v. Tracy*,
949 F.3d 927 (5th Cir. 2020) ..........................................................................10

**Statutes**

U.S. Const. amend. I ..............................................................................*passim*

U.S. Const. amend. XIV ..........................................................................*passim*

Iowa Code § 103A.71(3)..........................................................................*passim*

Iowa Code § 522C.2(7)............................................................................*passim*

**Other Authorities**

Opinion of Kansas Attorney General, No. 2025-22 (Sept. 18, 2025) .....................24

State of Iowa Amicus Brief in *Chiles v. Salazar*, No. 24-539................9, 16, 17, 21



Appellate Case: 25-2991 Page: 7 Date Filed: 11/20/2025 Entry ID: 5580318

## JURISDICTIONAL STATEMENT

Jurisdiction in the district court was based on 28 U.S.C. § 1331, as Shamrock alleged that Iowa's laws violated both the First and Fourteenth Amendments of the United States Constitution. Appellees moved to dismiss the Complaint for failure to state a claim, which was granted by the district court on September 18, 2025. Judgment was entered on September 19, 2025, which disposed of all claims. Shamrock filed a timely appeal on October 2, 2025. This court's jurisdiction is based on 28 U.S.C. § 1291, which provides for jurisdiction over a final judgment from a U.S. District Court.

## STATEMENT OF THE ISSUES

The following issues are presented for review on appeal:

1. Whether the district court erred in dismissing Shamrock's claim that Iowa's public adjuster laws violate the First Amendment's right to free speech by deciding that Shamrock failed to state a claim upon which relief could be granted.

U.S. Const. amend. I

Iowa Code § 522C.2(7)

Iowa Code § 103A.71(3)

*Tex. Dep't of Ins. v. Stonewater Roofing, Ltd.*, 696 S.W.3d 646 (Tex. 2024)

*National Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755 (2018)

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)

*33 Carpenters Constr., Inc. v. State Farm Life & Cas. Co.*, 939 N.W.2d 69 (Iowa 2020)

2. Whether the district court erred in dismissing Shamrock's claim that Iowa's public adjuster laws are void for vagueness by finding that Shamrock failed to state a claim upon which relief could be granted.

U.S. Const. amend. XIV, § 1

*United States v. Williams*, 553 U.S. 285 (2008)

*Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489 (1982)

*Nygard v. City of Orono*, 39 F.4th 514 (8th Cir. 2022)

*United States v. Turner*, 842 F.3d 602 (8th Cir. 2016)

## STATEMENT OF THE CASE

Shamrock is a residential contractor that operates in Iowa, Texas, Colorado, Arkansas, Nebraska, Missouri, South Dakota, Oklahoma, and Kansas. App. 2, ¶¶ 4–5; R. Doc. 1, at 2. The Iowa Insurance Division ("IID") is an administrative agency created within Iowa's Department of Commerce which is legislatively prescribed to regulate and supervise the business of insurance conducted in Iowa. App. 2, ¶ 7; R. Doc. 1, at 2. Doug Ommen ("Ommen") is the Insurance Commissioner for Iowa. App. 2, ¶ 10; R. Doc. 1, at 2. David Sullivan ("Sullivan") is the Assistant Bureau Chief of the IID and is tasked with investigating consumer complaints and inquiries from the public and conducting investigations to determine whether any persons or entities have violated any provision of the insurance codes, statutes, or regulations of the State of Iowa. App. 2, ¶¶ 13–15; R. Doc. 1, at 2.

On or about July 2, 2024, the IID, by and through Sullivan, served Shamrock with a Warning Notice, alleging that Shamrock was potentially engaged in the practice of "unlicensed public insurance adjusting." The Warning Notice identified a number of "terms and phrases" that if used by "an unlicensed individual" constitute "a violation of Iowa Code and/or Iowa Administrative Rules." App. 16; R. Doc. 13-1, at 2; Add. 2. Included among those restricted "terms and phrases" were:

- "We are insurance claim experts."
- "We are an advocate for you against your insurance company."

- "At (Company name) we advocate for homeowners."
- "At (Company name) we'll assist you with the claims process to ensure you get your full payment."
- "Our knowledgeable insurance claim specialists work through an easy claims process to help you get covered by insurance."

*Id.*

On or about September 5, 2024, the IID, by and through Sullivan, sent Shamrock a second letter identifying additional "concerning language" on Shamrock's social media pages, including statements by Shamrock's customers:

- "Helped us navigate the red tape…"
- "Helped me start the claims process with my insurance company. After being denied coverage"
- "They insured that we were treated fairly with the insurer, so we got the coverage our insurance policy intended."
- "less than helpful and forthcoming insurance company, ***, and the professionals at Shamrock Roofing were able to work through the issues."

App. 19–20; R. Doc. 13-2, at 1–2; Add. 5–6.

On September 25, 2024, Shamrock filed a Complaint for declaratory and injunctive relief. App. 1–9; R. Doc. 1. In its Complaint, Shamrock alleged that Iowa's public adjuster laws violated both the First and Fourteenth Amendments.

On January 13, 2025, Appellees filed a motion to dismiss for failure to state a claim. App. 10–14; R. Doc. 10.

On September 18, 2025, the district court issued an order granting Appellees' motion to dismiss. The district court concluded that Iowa's public adjuster laws do not violate the First Amendment because they do not regulate speech but, instead, regulate conduct with only incidental impacts on speech. App. 33–34; R. Doc. 41, at 13–14; Add. 19–20. The district court further concluded that Iowa's public adjuster laws are not void for vagueness in violation of the Fourteenth Amendment. App. 36–38; R. Doc. 41, at 16–18; Add. 22–24.

Shamrock appeals the district court's decision.

## SUMMARY OF THE ARGUMENT

Shamrock, as a residential contractor, helps homeowners make repairs to their homes following damage from storms and other catastrophic events. Those repairs are often covered by insurance policies—convoluted contracts that are often narrowly enforced by swarms of claims representatives and lawyers to minimize payouts and increase profits for insurance companies. Homeowners want Shamrock to aid and assist them in navigating the red tape. Homeowners want Shamrock to tell them about the insurance process. They want Shamrock to speak to insurance carriers about the damage to their homes and the repairs and costs necessary to fix the damage. Shamrock cannot, however, aid and advise Iowa homeowners in such ways. As presently enforced, Iowa's public adjuster laws make it a crime for Shamrock and all other contractors to aid and advise homeowners in the insurance claims process.

Shamrock does not challenge the State's ability to generally regulate and require licensure for "public adjusters." The constitutional issues arise because Iowa defines a "public adjuster" by a person's speech—not a person's conduct or status. By defining "public adjuster" in such a way, Iowa is not regulating a profession, it is regulating speech in violation of the First Amendment.

The district court in this matter found otherwise, concluding that Iowa was properly regulating professional conduct with mere incidental impacts on speech.



Appellate Case: 25-2991 Page: 13 Date Filed: 11/20/2025 Entry ID: 5580318

This was error. The free speech protections found in the First Amendment are some of the most important in our Constitution and the Supreme Court has only recognized proper regulation of incidental speech in narrow circumstances. Where, as here, the "conduct" being regulated is triggered by speech itself, the Supreme Court has recognized that the laws regulate speech, not conduct, and implicate the First Amendment.

The district court further erred in finding that Iowa's public adjuster laws are not void for vagueness. Under either an as-applied or a facial challenge, the restriction on "aiding" or "advising" homeowners does not provide adequate notice of the proscribed conduct and lends itself to arbitrary enforcement.



Appellate Case: 25-2991 Page: 14 Date Filed: 11/20/2025 Entry ID: 5580318

## ARGUMENT

### I. Standard of Review

The district court's order granting Appellee's motion to dismiss is reviewed *de novo*. *Bresnahan v. City of St. Peters*, 58 F.4th 381, 384 (8th Cir. 2023). A claim survives a motion to dismiss if the complaint's nonconclusory allegations, accepted as true, make it plausible that the defendant is liable. *Id.* In a challenge to the constitutionality of state laws, at the motion to dismiss stage, the court need not decide the appropriate degree of scrutiny for the subject laws, nor whether the laws actually pass constitutional muster. Rather, if a party has pleaded sufficient facts to demonstrate that its rights to free speech have been implicated, dismissal is improper. *See generally id.*

### II. The district court erred in finding that Iowa's public adjuster laws regulate conduct with mere incidental impacts on speech.

The Free Speech Clause of the First Amendment to the United States Constitution, applicable to the State of Iowa through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. "Above all else the First Amendment means that government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020) (plurality opinion) (cleaned up). "Laws that 'target speech based on its communicative content' are 'presumptively unconstitutional.'" *Brandt v. Griffin*, 147 F.4th 867, 888 (8th Cir.



Appellate Case: 25-2991 Page: 15 Date Filed: 11/20/2025 Entry ID: 5580318

2025) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). As the Iowa Attorney General recognized in a recent amicus brief to the United States Supreme Court, there are only "extremely limited instances when it is proper for the State to intercede and protect its citizens by restricting speech." Brief for Iowa and 11 Other States as Amici Curiae Supporting the Granting of the Petition, at 7, C*hiles v. Salazar* (No. 24-539) ("Iowa Amicus Brief").

Iowa has passed a law that generally forbids residential contractors, like Shamrock, from acting as a public adjuster. *See* Iowa Code § 103A.71(3); *see also 33 Carpenters Constr., Inc. v. State Farm Life and Cas. Co.*, 939 N.W.2d 69 (Iowa 2020). Iowa law broadly defines a public adjuster as "any person who for compensation or any other thing of value acts on behalf of any insured by doing any of the following: (a) . . . aiding an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal property [or] (c) . . . advising an insured about [the same]." Iowa Code § 522C.2(7).

The district court found that Iowa's public adjuster laws did not raise a First Amendment issue because the statute targets professional conduct and merely incidentally burdens free speech, if at all. App. 33–34; R. Doc. 41, at 13–14; Add. 19–20. The district court incorrectly applied the Supreme Court's precedents in determining that Iowa's public adjuster laws only incidentally burden free speech.

### A. Only narrow categories of speech receive less First Amendment protection as incidental burdens.

"[T]he Supreme Court recognizes that the First Amendment 'does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech.'" *Brandt*, 147 F.4th at 888 (quoting *National Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 769 (2018) ("NIFLA")). However, this exception to the First Amendment is narrow and the Supreme Court has expressly refused to adopt a doctrine that "treat[s] professional speech as a unique category that is exempt from ordinary First Amendment principles." *NIFLA*, 585 U.S. at 773.

Indeed, the Supreme Court has rejected the idea that to make something a profession, it must simply "involve[] personal services and require a professional license from the State." *Id.* That, according to the Supreme Court, would "give[] the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Id.* In short, the Supreme Court has "rejected the proposition that First Amendment protection turns on whether the challenged regulation is part of an occupational-licensing scheme." *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 932 (5th Cir. 2020). As the Iowa Attorney General recently recognized, if improperly applied, the "incidental exception risks swallowing the generally protective rule." Iowa Amicus Brief at 9. Simply stated, and as acknowledged by Iowa, "*NIFLA* explained that States may not regulate speech 'under the guise of prohibiting professional misconduct.'" *Id.*

Instead, when evaluating restrictions on professionals, the question is "whether the Act regulates speech, conduct, or both." *Brandt*, 147 F.4th at 888. "'While drawing the line between speech and conduct can be difficult,' the precedents of the Supreme Court have long drawn that line." *Id.* (quoting *NIFLA*, 585 U.S. at 769). "Whether the Act 'proscribes speech, conduct, or both depends on the particular activity in which an actor seeks to engage.'" *Id.* at 889 (quoting *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021)).

Circumstances in which the Supreme Court has concluded that speech is incidental to conduct are limited. For example, an ordinance against outdoor fires is triggered by nonspeech conduct (burning outdoor fires) even as applied to someone burning a flag in an act of protest. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992). A ban on race-based hiring is triggered by nonspeech conduct (race-based hiring) even if it has the at-most-incidental effect of obliging employers to remove "White Applicants Only" signs. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). A price cap is triggered by nonspeech conduct (collecting money) even if it has an incidental effect on the numbers printed on price tags. *See Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017). An informed-consent requirement is triggered by nonspeech conduct (performing a medical procedure) even if it has the incidental effect of obliging the surgeon to convey information to the patient. *See*

*NIFLA*, 585 U.S. at 770. In these situations, the law is not triggered by the message. That is what makes the speech burden incidental to the conduct regulation.

On the other hand, there are laws that are triggered, not by "the independent noncommunicative impact of conduct," but by the act of communicating itself. *O'Brien*, 391 U.S. at 382. These laws "regulate[] speech as speech." *NIFLA*, 585 U.S. at 770. On this issue, the Supreme Court's decision in *Holder v. Humanitarian Law Project* is most instructive. 561 U.S. 1 (2010). The plaintiffs there challenged a law prohibiting "material support" to foreign terrorist organizations. *Id.* at 26. The government argued that "the only thing truly at issue" was "conduct, not speech." The Supreme Court disagreed. "[A]s applied to plaintiffs the conduct triggering coverage under the statute consist[ed] of communicating a message," and its application "depend[ed]" on what the plaintiffs said. *Id.* at 27–28.

Similarly, in *Cohen v. California*, the Court held that a disorderly-conduct statute restricted a defendant's speech directly, when "[t]he only 'conduct' which the State sought to punish is the fact of communication," not any "separately identifiable" nonspeech conduct. 403 U.S. 15, 18 (1971). In *NIFLA*, the Court held that a notice requirement "regulates speech as speech" when its applicability was "not tied to a procedure" or to another form of nonspeech conduct. 585 U.S. at 770.

As applied, the analysis is straightforward. A law restricts conduct and burdens speech only incidentally if it is triggered by "some 'separately identifiable'

conduct to which the speech was incidental." *Tingley v. Ferguson*, 57 F.4th 1072, 1075–76 (9th Cir. 2023) (statement of O'Scannlain, J., respecting the denial of rehearing en banc). On the other hand, a statute acts as a direct restraint on speech when "the conduct triggering coverage . . . consists of communicating a message." *Holder*, 561 U.S. at 28. Applying these principles, "courts have generally been able to distinguish" between laws that restrict speech directly and those that regulate nonspeech conduct and burden speech only incidentally. *Barr*, 591 U.S. at 620.

### B. Iowa's public adjuster laws, as applied, regulate speech, not conduct.

The district court wholly failed to substantively analyze whether Iowa's public adjuster laws implicate speech, conduct, or both. The district court recognized that "Section 522C.2(7) defines a public adjuster as an individual who 'acts on behalf of an insured by doing' any of an enumerating list of actions." App. 33; R. Doc. 41, at 13; Add. 19. The district court then summarily concluded, without evaluating whether the "enumerating list of actions" are speech or conduct, that "Iowa's regulatory scheme falls clearly within the second category of appropriate regulation of professional conduct with mere incidental impacts on speech." App. 33–34; R. Doc. 41, at 13–14; Add. 19–20.[1]

---

[1] The district court's conclusion appears to have rested on a misapplication of the Supreme Court's decision in *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949), which found that "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct



Appellate Case: 25-2991 Page: 20 Date Filed: 11/20/2025 Entry ID: 5580318

The district court's failure to substantively evaluate the "enumerating list of actions" that define whether one is considered a public adjuster led to the erroneous conclusion that Iowa regulates conduct, not speech. The "enumerating list of actions" that makes one a public adjuster in Iowa includes "aiding an insured in negotiating for or effectuating the settlement of . . . or advising an insured about" first-party claims for loss or damage to real or personal property of the insured. Iowa Code § 522C.2(7)(a)–(c). As applied, Iowa is using the public adjuster laws to regulate speech, not conduct.

In a July 2, 2024 letter to Shamrock, the Iowa Insurance Division claimed the following representations, among others, evidenced violations of the law: "We are an advocate for you against your insurance company"; "At (Company name) we advocate for homeowners"; "At (Company name) we'll assist you with the claims process to ensure you get your full payment"; "We can interpret insurance coverage and assist with line-of-sight settlements with your insurance carrier"; [In a Contractor Insured Authorization] "The purpose of this authorization is to enable

---

was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." "[T]he key phrase is 'in part.' There must be some 'separately identifiable' conduct to which the speech was incidental." *Tingley*, 57 F.4th at 1075–76 (statement of O'Scannlain, J., respecting the denial of rehearing en banc) (quoting *Cohen*, 403 U.S. at 18).



Appellate Case: 25-2991 Page: 21 Date Filed: 11/20/2025 Entry ID: 5580318

(Company name) to speak with the below named insurance company regarding the claim listed below." App. 16; R. Doc. 13-1, at 2; Add. 2.

Each of these purported violations is based upon the existence and content of speech. Stated simply, Iowa is restricting contractors from speaking to homeowners about their losses and policies and restricting contractors from speaking with insurers about damages to a homeowner's home.

Further, in a September 5, 2024 letter to Shamrock, the Iowa Insurance Division asserted that the following customer reviews contain "concerning statements" about Shamrock's status as a public adjuster: "Helped up [sic] navigate the insurance red tape"; "Helped me start the claims process with my insurance company."; "They helped me with the insurance claim"; "Helped us navigate the insurance requirements"; "Helped us navigate the red tape"; "Shamrock walked me through everything with insurance reimbursement"; "They helped me with my insurance claim." App. 19–20; R. Doc. 13-2 at 1–2; Add. 5–6.

There can be no legitimate question that these are restrictions on speech. Words spoken during "conversation[s] . . . transmi[t] . . . ideas" and thus are speech. *McCullen v. Coakley*, 573 U.S. 464, 488 (2014); *accord United States v. Alvarez*, 567 U.S. 709, 722–23 (2012) (plurality opinion) (acknowledging that "personal . . . conversations" are speech). The Supreme Court has held that conversations constitute speech both outside the professional context, *e.g., McCullen*, 573 U.S. at



Appellate Case: 25-2991 Page: 22 Date Filed: 11/20/2025 Entry ID: 5580318

488 (conversations on sidewalks), and within it, *e.g., Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542–43 (2001) ("advice from [an] attorney to [a] client"). "If speaking to clients is not speech, the world is truly upside down." *Tingley v. Ferguson*, 144 S. Ct. 33, 34 (2023) (Thomas, J., dissenting from the denial of certiorari) (quoting *Otto v. City of Boca Raton*, 981 F.3d 854, 866 (11th Cir. 2020)).

Debates on conduct versus speech and the scope of the incidental burden exception have been actively litigated in recent years as states have passed various laws regulating what medical professionals and therapists can and cannot say or do with respect to conversion therapy and gender transition procedures for minors. *See, e.g.*, *Brandt*, 147 F.4th 867 (en banc). Indeed, on October 7, 2025, the Supreme Court heard arguments in a challenge to Colorado's ban on conversion therapy. *See Chiles v. Salazar*, No. 24-539. The question presented in that case is "Whether a law that censors certain conversations between counselors and their clients based on the viewpoints expressed regulates conduct or violates the Free Speech Clause." While the regulation of medical professionals with regard to conversion therapy is obviously fundamentally different from the regulation of those looking to aid and advise homeowners with insurance matters, the legal principles overlap.

In the pending case before the Supreme Court, Iowa has taken a clear position on such laws, endorsing the analysis of Judge Hartz's dissent in the decision by the Tenth Circuit below. *See* Iowa Amicus Brief at p. 10. Iowa recognized the

"remarkable" error that "treats speech as conduct." *See id*. (quoting *Chiles*, 116 F.4th at 1228 (Hartz, J., dissenting)). Judge Hartz found that "a restriction on speech is not incidental to regulation of conduct when the restriction is imposed because of the expressive conduct of what is said." *Id.* Iowa agreed with Judge Hartz that this "leads to the absurd result that to avoid the First Amendment, all a State must do 'is put it within a category ('a therapeutic modality') that includes conduct and declare that any regulation of speech within the category is merely incidental to regulating the conduct.'" *Id.* (quoting *Chiles*, 116 F.4th at 1231). As Iowa has said, "that 'labeling game' fails." *Id.*

The "conduct triggering coverage," *see Holder*, 561 U.S. at 28, under Iowa's public adjuster laws is speech. As such, Iowa's public adjuster laws regulate speech and not just conduct with only incidental burdens on speech.

### C. The district court's decision is at odds with the well-reasoned decision by the Texas Supreme Court interpreting its public adjuster laws.

To the best of Shamrock's knowledge, Iowa's public adjuster laws are one of the broadest—if not the most broad—public adjuster laws enforced in the nation. For a period of time, Texas sought to enforce its public adjuster laws in a manner similar to Iowa, effectively restricting all contractors from speaking to homeowners and insurance carriers about their insurance claims. Those laws faced a similar First Amendment challenge. *See Tex. Dep't of Ins. v. Stonewater Roofing, Ltd.*, 696

S.W.3d 646 (Tex. 2024). The analysis of Texas's public adjuster laws in *Stonewater Roofing* is instructive.

Like here, the constitutionality of the Texas public adjuster laws in *Stonewater Roofing* depended on whether the laws were directed at speech or conduct. *See id.* at 654. That question, in turn, depended on the scope of what Texas considered to be a public adjuster. *Id.* at 656 ("The nub of the dispute concerns the scope of the defined profession itself . . . .").

The Texas law, as interpreted by the Texas Supreme Court, defined "the *role* a person *plays* in a *nonexpressive* commercial transaction, not what anyone may or may not *say*." *Id.* at 656 (emphasis in original). More specifically, under Texas law, "[a]s defined, the profession's actuating activity and dominant focus is employment in a representative (or agency) capacity." *Id.* "Under state law, assuming authority to act 'on behalf of' someone else gives rise to a status of legal significance that carries material consequences for the principal and imposes corresponding burdens on the agent. Status and capacity are not speech." *Id.* Accordingly, because the Texas laws only restricted one's ability to act as an agent for insureds, and not what speech may have been uttered incidental to the agency relationship, Texas's public adjuster laws were found to be constitutional. *See id.* at 655.

The concurring opinions in *Stonewater Roofing* underscored the limited nature of the majority's holding and the unconstitutionality of a broader application

of the public-adjuster laws. Justice Blacklock recognized that the Texas law "regulates only the agency relationship between parties in a commercial transaction." *Id.* at 663. The Texas law "does not prohibit a contractor from negotiating with an insurance company regarding settlement of an insured homeowner's claim for repairs." *Id.* "Instead, the statute merely prohibits the contractor from *acting as an insured's agent*—'act[ing] 'on behalf of an insured'—in those negotiations. [The Texas law] thus regulates the legal consequences of the contractor's speech, not the content of that speech." *Id.* (emphasis in original). The Texas law "does not prohibit Stonewater from *saying* anything to insurance companies—other than 'I am negotiating or settling this claim as an agent for the insured,' or an equivalent statement suggesting that the contractor is authorized to 'act[] on behalf of [the] insured.'" *Id.* (emphasis in original).

Justice Blacklock went on to clarify that under Texas law, "the contractor can talk freely with both the insurance company and the homeowner about anything they would like to talk about." *Id.* at 664. "Crucially, the contractor and the insurance company are free to talk all day long about the negotiation and settlement of an insured's claim, as long as the contractor does not '*act[] on behalf of* an insured in negotiating for or effecting the settlement.'" *Id.* (emphasis in original). "[The Texas law] does not prohibit contractors from *speaking* with insurance companies about the scope of insurance coverage or about the details or costs of the work the

contractor is doing and the insurance company is funding. Instead, the statute only prohibits a contractor from *acting* in a representative capacity, 'on behalf of an insured.'" *Id.* (emphasis in original). "As long as any understanding worked out between the contractor and the insurance company must be independently authorized by the insured—and as long as all involved know that the contractor is never 'act[ing] on behalf of' the insured—then nothing in this statute prohibits contractors like Stonewater from haggling with an insurance company over the details of construction costs and insurance coverage." *Id.*

Not only is this reflective of the constitutionality of the laws, but it also makes policy sense, as outlined by Justice Blacklock. "Few homeowners want to be deeply involved in [conversations about construction costs and insurance coverage], and nothing in [Texas law] prohibits contractors from discussing these things with insurance companies so the homeowner does not have to." *Id.* at 664. Under Texas law, residential contractors are "free to tell homeowners that [they] can make their lives much easier by dealing with the insurance company regarding the claim, just as many helpful contractors (who want to please their customer and get paid by the insurance company) often do." *Id.* at 664–65.

Justice Young, in his separate concurrence, similarly recognized that "today's construction allows Stonewater to do quite a lot that the government may want to forbid—including discussing, in detail, the damage and costs of repair with the

insurance company. . . . This narrow construction avoids serious constitutional problems." *Id.* at 668.

Justice Young also echoed the position endorsed by Iowa as amici in *Chiles v. Salazar* that a state's ability to regulate speech would be virtually unlimited if states were allowed to simply categorize speech as conduct. Simply stated, if the district court's reasoning to uphold Iowa's public adjuster laws is affirmed, states could pass laws requiring all persons taking money to produce news articles (i.e. those engaging in the "conduct" of "journalism") to become licensed and impose "incidental" burdens on the "conduct" of "journalism" by banning journalists from making certain statements, all without offending or even implicating the First Amendment. *See id.* at 667. Such a conclusion is, of course, indefensible under the First Amendment as we know it.

### D. As recognized by the district court, Iowa's law is fundamentally different than the Texas law at issue in *Stonewater Roofing*.

The serious constitutional problems recognized in *Stonewater Roofing* permeate Iowa's regulatory scheme. Contrary to the district court's conclusion, under Iowa's scheme, words or speech are not evidence that a contractor is "holding themselves out as a public adjuster," *see* App. 33; R. Doc. 41, at 13; Add. 19; rather, words and speech are the "conduct triggering coverage." *Holder*, 561 U.S. at 28. In other words, under Iowa's scheme, words and speech make one a public adjuster. Shamrock desires to speak to its customers about the insurance claims process.

Shamrock's customers want to speak to Shamrock about the insurance claims process. Those customers, most of which are neither proficient in construction nor insurance, also want Shamrock to speak to their insurance carriers—not as an agent, but as someone with the experience necessary to speak intelligently about the issues with the claim.

To be sure, Iowa Code § 522C.2(7), like the Texas statute at issue in *Stonewater Roofing*, uses the phrase "on behalf of." *Compare* Iowa Code § 522C.2(7), *with Stonewater Roofing*, 696 S.W.3d at 650 (quoting statute). Yet under the Texas statute, "status and capacity" were the "actuating activity and dominant focus," meaning that "speech [was] not remotely the defining characteristic of the insurance adjuster's job." *Stonewater Roofing*, 696 S.W.3d at 656. Not so under Iowa's scheme.

Under Iowa Code § 522C.2(7)'s plain terms, speech is at the heart of the public adjuster's job. Unlike the Texas statute, Iowa Code § 522C.2(7) defines a public adjuster as a person who for compensation "acts on behalf of an insured *by* [among other things] . . . aiding . . . or advising an insured." Iowa Code § 522C.2(7)(a)–(c) (emphasis added). As the district court recognized, the actuating activity is not status but, rather, the so-called "enumerating list of actions." In Iowa, one becomes a public adjuster by "aiding" or "advising" an insured—by, as explained above, "what a person *says* about property subject to an insurance claim

or to whom they *say* it." *See Stonewater Roofing*, 696 S.W.3d at 658 (emphasis added). Unlike Texas's law, Iowa law thus restricts "what a person may or may not say or to whom they may or may not speak." *Id.*[2]

By defining a public adjuster based upon whether a person aids or advises homeowners, Iowa regulates speech, not conduct. And because those statutes impose a burden "based on the content of the speech," they impose "more than an incidental burden on protected expression." *Sorrel*, 564 U.S. at 567. These are content based restrictions that infringe on the First Amendment rights of contractors. The district court erred in concluding otherwise.[3]

### E. The fact that other states regulate public adjusters is of no consequence.

The district court appeared to believe that its conclusion was reinforced by the fact that forty-five states have public adjuster laws. *See* App. 34; R. Doc. 41, at 14;

---

[2] Iowa Code § 103A.71(3)—the ban on residential contractors from obtaining public adjuster licenses—differs from section 522C.2(7), restricting residential contractors from "represent[ing] or negotiat[ing] *on behalf* of insureds." (emphasis added). But the Iowa Supreme Court has interpreted the statute to forbid residential contractors from acting like public adjusters, as defined in § 522C.2(7). *See 33 Carpenters Constr. Inc.*, 939 N.W.2d at 79–81. Accordingly, as interpreted by the Iowa Supreme Court, § 103A.71(3) broadly, and unconstitutionally, restricts residential contractors like Shamrock from exercising their First Amendment rights to the extent they would "aid" or "advise" an insured.

[3] The fact that such speech must be done for compensation does not change the analysis. *See Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 801 (1988) ("It is well settled that a speaker's rights are not lost merely because compensation is received").

Add. 20. The district court was mistaken. The fact that most other states have recently passed public adjuster laws gives Iowa's laws no constitutional protection. Each state's laws must be evaluated on their own merits. Again, Texas' public adjuster laws, for example, define a public adjuster not by speech, but by an agency relationship. *See Stonewater Roofing*, *supra*. As another example, Kansas regulates public adjusting in connection with commercial properties, but not residential properties. *See* Opinion of Kansas Attorney General, No. 2025-22 (Sept. 18, 2025).

It is the manner in which Iowa regulates public adjusters which is the core of the issue, not the general existence of regulation. Furthermore, to the extent there are other states with similar regulatory schemes, there is no evidence in the record that those states are enforcing their schemes in the manner Iowa is enforcing theirs, nor is there any authority showing that any such schemes have withstood constitutional challenges.

The district court's opinion stands alone, is at odds with both Supreme Court precedent and the well-reasoned decision in *Stonewater Roofing*, and is a direct attack on free speech rights in Iowa.

## III. The district court erred in concluding that Iowa's prohibition on advertising did not violate the First Amendment.

The district court also dismissed Shamrock's challenge to Iowa's prohibition on advertising. *See* App. 34–35; R. Doc. 41, at 14–15; Add. 20–21. Shamrock concedes that if Iowa's public adjuster laws were proper regulation of professional

conduct—they are not—that the ban on advertising as a public adjuster would also survive any First Amendment challenge. However, because, as outlined above, Iowa's general licensure structure for public adjusters violates the First Amendment, Iowa does not have a compelling interest in restricting persons from advertising that they can and will aid and assist homeowners in their insurance claims. States cannot restrict advertisements to speak by unconstitutionally making the underlying speech illegal.

## IV. The district court erred in concluding that Iowa's public adjuster laws are not void for vagueness.

Separate from its claim that Iowa's public adjuster laws violate the First Amendment, Shamrock also brought a claim that Iowa's public adjuster laws are void for vagueness. The district court similarly erred in dismissing this claim.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The "[v]agueness doctrine is an outgrowth of the Due Process Clause." *United States v. Williams*, 553 U.S. 285, 304 (2008). Under the Fourteenth Amendment, a statute may be unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In other words, a vague law may fail to provide adequate notice of what is proscribed and thus "'may trap

the innocent man.'" *Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489, 498 (1982) (citation omitted). A vague law also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Id.* (citation omitted).

The district court appeared to subject Iowa's public adjuster laws to a less strict vagueness test as an economic regulation. App. 36; R. Doc. 41, at 16; Add. 22. This was error. As thoroughly detailed above, Iowa's public adjuster laws interfere with the right of free speech. "[T]he most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Vill. of Hoffman Ests.*, 455 U.S. at 499. As a law that makes it a crime to speak on certain matters, *see* Iowa Code §§ 522C.2(7), 103A.71(3), Iowa's public adjuster laws should be held to an exacting standard.

Vagueness challenges come in two forms. One is an as-applied challenge. "For an as-applied challenge, 'we look to whether the statute gave adequate warning, under a specific set of facts, that [the party's] behavior was a criminal offense.'" *United States v. Milk*, 66 F.4th 1121, 1135 (8th Cir. 2023) (citation omitted).

The second is a facial challenge. In a facial challenge, the statute is "vague, not in the sense that it requires a person to conform his conduct to an imprecise but

comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). "Although ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' we have relaxed that requirement in the First Amendment context." *United States v. Williams*, 553 U.S. 285, 304 (2008).

Again, Iowa's public adjuster laws are a penal statute, a violation of which is a serious misdemeanor. *See* Iowa Code §§ 522C.2(7); 103A.71(3). "To defeat a vagueness challenge, a penal statute must pass a two-part test: The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." *Nygard v. City of Orono*, 39 F.4th 514, 519 (8th Cir. 2022) (quoting *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009)).

Properly applying the test for vagueness reveals that Iowa's public adjuster laws are void for vagueness. First, the statute does not provide adequate notice of the proscribed conduct. In its order, the district court cited only a select few things that the Iowa Insurance Division claimed violated the law, and it only evaluated the restriction on "aiding an insured in negotiating." Other things that the Iowa Insurance Division stated violated the law—which the district court did not address—included: advocating for a homeowner, advocating against an insurance company, assisting with the claims process, meeting with an insurance adjuster,

helping to navigate the insurance red tape, walking a homeowner through the insurance claim process, and helping a homeowner with their insurance claim. App. 16; R. Doc. 13-1, at 2; Add. 2.

The public adjuster laws do not give adequate notice that it is a criminal violation for one to speak to an insurance adjuster. There is not adequate notice or warning that it is a criminal violation to "help" a homeowner with their insurance claim. Indeed, there is no notice what type of "help" constitutes criminal conduct. "A law's failure to provide fair notice of what constitutes a violation is a special concern where laws 'abut[] upon sensitive areas of basic First Amendment freedoms' because it 'inhibit[s] the exercise' of freedom of expression and 'inevitably lead[s] citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'" *Stahl v. City of St. Louis*, 687 F.3d 1038, 1041 (8th Cir. 2012) (quoting *Grayned v. City of Rockford*, 408 U.S. 104 (1972)). Here, Iowa's laws require contractors to steer far from the unlawful zone of "aiding" or "assisting" as homeowner with their claim. If a customer asks a contractor about the scope of the repairs on the house, the necessary materials, or anything similar, a contractor may face criminal charges if they answer the customer's question—as Iowa takes the position that "helping" a homeowner with an insurance claim is a crime.



Appellate Case: 25-2991 Page: 35 Date Filed: 11/20/2025 Entry ID: 5580318

Second, the statute lends itself to arbitrary enforcement. The district court wholly failed to apply this second part of the test for vagueness. If it had, it would have determined that “aiding an insured in negotiating or effecting the settlement of a first party claim” and “advising an insured about first-party claims” cover any range of activities, subject only to the whims of regulators.

Does explaining to a homeowner that he or she had a right to submit an insurance claim subject oneself to criminal penalties? By making such an explanation, the person is, at the very least, arguably advising the homeowner with respect to their claim. If that person goes further and advises a homeowner to fight the insurance company, how does the statute apply? If the person advises a homeowner to hire a licensed public adjuster to assist with the first-party claims, that person is also potentially subjecting themselves to criminal sanctions.

Shamrock’s first and foremost role is providing an estimate for repairs and then making the repairs. Does a person improperly act as a public adjuster—and subject themselves to criminal penalties—if they provide an estimate for repairs? By providing an estimate, the person aids the insured in their ability to negotiate the amount of the settlement of a first-party claim and advises the insured about first-party claims. If a contractor provides an estimate for repairs and the insurance company responds that certain materials are unnecessary to complete the repair, is the contractor restricted from advising the homeowner that the materials are actually

necessary for a complete and safe repair? Does a contractor subject him or herself to potential criminal violations if they advise the homeowner that repairing a roof in the manner demanded by an insurance company will result in further damage to their home in the future? If an insurance company denies coverage because it claims that water came from an uncovered source, is a contractor subject to criminal liability if he or she advises the homeowner that water came from another (covered) source? Is the contractor also restricted from explaining to the insurance company how he or she came to that conclusion?

Providing homeowners or insurers with factual information about repairs and responding to requests for information about property damage, the scope of necessary repair work, estimated costs, and repair methods all aid homeowners with the insurance process. The hypothetical conduct that could fall within "aiding" or "advising" an insured is effectively limitless and is only bound by the subjective beliefs of unelected regulators.

Finally, at the very least, the district court should have denied the motion to dismiss and waited until summary judgment or trial to rule on Shamrock's as-applied challenge. *See United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016). Determining the type of "help" or "assistance" that Iowa cited as violations or concerns with the law required a developed factual record. Rather than allowing that factual record to develop, the district court necessarily speculated and effectively



Appellate Case: 25-2991 Page: 37 Date Filed: 11/20/2025 Entry ID: 5580318

implemented its own construction and interpretation of the type of "help," "assistance," and "advocacy" that Shamrock was engaging in, and which Iowa has purportedly provided adequate warning.[4]

## CONCLUSION

Shamrock has pleaded a prima facie case that Iowa's public adjuster laws violate either or both the First and Fourteenth Amendments. For the reasons set forth herein, Shamrock respectfully requests that the Court reverse the district court's order and remand for further proceedings consistent with the Court's opinion.

Shamrock Hills, LLC d/b/a Shamrock Roofing and Construction, Appellant.

By: /s/ Adam W. Barney
Heather Voegele
Adam W. Barney
Voegele Anson Law, LLC
3516 N. 163rd Plaza
Omaha, NE 68116
(531) 999-1857
hvoegele@v-alaw.com
abarney@v-alaw.com

[4] Of note, in determining whether Shamrock was on adequate notice of the proscribed conduct, the district court gave deference to the Iowa Supreme Court's purported interpretation of the public adjuster laws. This was error. In *33 Carpenters*, the Iowa Supreme Court did not interpret the language that Shamrock principally challenges. 939 N.W.2d at 79–81. Rather, the Iowa Supreme Court concluded that 33 Carpenters unlawfully "*acted* on behalf of the [homeowners] in negotiating their claim." *Id.* at 81 (emphasis added). The decision therefore evaded any analysis of the phrases "aiding an insured" or "advising an insured" as found in the statute. No deference was necessary or appropriate as the phrases "aiding" and "advising" have not been interpreted by the Iowa Supreme Court.

and

/s/ Brandon R. Underwood

Brandon R. Underwood
Hannah J. Weymiller
Fredrikson & Byron, P.A.
111 East Grand Avenue, Suite 301
Des Moines, Iowa 50309
(515) 242-8900
bunderwood@fredlaw.com
hweymiller@fredlaw.com

*Attorneys for Appellant.*

## Certificate of Compliance

Pursuant to Federal Rules of Appellate Procedure 32(a)(7), I hereby certify that this brief complies with the applicable type-volume limitation. Specifically, this brief contains 7,102 words using proportional spacing and 14-point type (Times New Roman font for Microsoft Word). The brief has been prepared using Microsoft® Word for Microsoft 365 MSO.and Adobe Acrobat XI.

In accordance with Eighth Circuit Rule 28A(h)(2), this Brief and the Addendum, which is being filed contemporaneously, have been scanned for viruses and both are virus-free.

By: /s/ Adam W. Barney
Heather Voegele
Adam W. Barney
Voegele Anson Law, LLC
3516 N. 163rd Plaza
Omaha, NE 68116
(531) 999-1857
hvoegele@v-alaw.com
abarney@v-alaw.com

and

/s/ Brandon R. Underwood
Brandon R. Underwood
Hannah J. Weymiller
Fredrikson & Byron, P.A.
111 East Grand Avenue, Suite 301
Des Moines, Iowa 50309
(515) 242-8900
bunderwood@fredlaw.com
hweymiller@fredlaw.com

*Attorneys for Appellant.*



Appellate Case: 25-2991 Page: 40 Date Filed: 11/20/2025 Entry ID: 5580318

## CERTIFICATE OF SERVICE

I hereby certify that, on November 14, 2025, I electronically filed the Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Erica Palmer*